Merrell, J.
Upon the record as here submitted, two questions are presented: first, as to *115 the propriety of the action of the court of appeals in reversing the trial court for failure to instruct the jury upon the issue of joint enterprise; and, second, whether the judgment of reversal was proper upon other grounds. For the sake of convenience, the latter will be considered first.
Underlying the entire case is the question of the nature and extent of the city’s responsibility to the public for the condition of the public ways of the city, and incident to this question is the further one of what is to be considered the proximate cause of an accident such as the one here involved.
For the purposes of this discussion, the conduct of the plaintiff and his alleged contributory negligence are not in point. The issues of contributory negligence were for the jury. These issues, at least so far as connected- with the plaintiff’s alleged violation of city ordinances relating to hitching, were properly presented to the jury, whose solution thereof cannot be reviewed upon the actual record.
The nature and extent of the city’s responsibility is therefore to be considered apart from collateral or entangling issues. That responsibility has been stated so often by this court that no further definition need be attempted. In City of Dayton v. Glaser, 76 Ohio St., 471, it is stated in the syllabus:
“A municipal corporation is charged with the duty of keeping its streets free from nuisance and in a reasonably safe condition for travel in the usual modes, but it is not an insurer of the safety *116 of persons using them, and when they are in that condition it is not chargeable with negligence, although an accident happens in the use of the streets.” ,
The doctrine so stated was merely a rephrasing of numerous prior decisions of this court. It has since been reaffirmed frequently, specifically in Gibbs v. Village of Girard, 88 Ohio St., 34, at page 47.
Applying this doctrine to the facts of the present case, so far as undisputed, can it be said that Euclid avenue in its condition at the time of the accident was in “reasonably safe condition for travel in the usual modes ?”
If it can be considered that the street fifty-four feet between curbs was open for travel for its entire width, and if the traveler thereon might assume, subject of course to ordinary care on his part, that the entire street between curbs was reasonably safe, the answer to the question might reasonably be given in the negative. Even so, the question would remain, whether a given accident was the outcome of travel in the usual modes.
At the trial there was a conflict in evidence as to whether the north shoulder of the street had been closed to traffic, or, rather, whether it had been effectively closed by proper precautions on the part of the city. There can be no doubt of the city’s right to take this action on proper occasion, such as was presented here, namely, during the improvement of the street. Apparently, however, the jury found against the city on,, this issue, and for the present purpose it may be assumed there was *117 evidence to support such finding. The fact nevertheless remains that neither the plaintiff nor his coworker on the truck .directed the team on to the northern and unfinished portion of the street. If the city had thrown open to travel the unfinished part of the street, or had failed by proper precaution to indicate that such part was closed to travel, and those in charge of the team had driven onto such unfinished part, relying upon appearances, or seeking perhaps to excuse by circumstances their inattention to the open trench, the case would have been quite different. No such version of the facts is contended for. The street where the truck stood prior to the runaway had a width available for safe travel of over thirty-four feet. Of this space, the team, when last under control, occupied properly and safely the portion farthest from the open trench. What happened thereafter occurred not in the course of travel upon the street in the ordinary modes, but primarily, and in a legal sense, solely through the uncontrolled and instinctive action of the frightened horses.
To speak of the runaway as the sole cause of the accident may however be thought to beg the question, ignoring as it does the city’s negligence, for this purpose assumed, in leaving unprotected the open trench.
In this connection reliance is placed upon the case of Hocking Valley Railway Co. v. Helber, Admr., 91 Ohio St., 231, wherein it is stated, at page 241: “The fact that some other cause operated with the negligence of a defendant in producing an injury does not relieve him frotr *118 liability, where such other cause would not have p'foduced the injury but for the defendant’s negligence.”
In that case the negligence of the defendant consisted in failing to maintain an adequate guard or rail on the sides of a bridge which it had provided for the use of the public, and the other cause which operated with such negligence to bring about the injury was the stumbling of plaintiff’s horses as they were crossing the bridge.
In the Ilelber case the plaintiff at the time of the accident was directing his team over the bridge; he was traveling the public way in the ordinary mode. The defendant had failed in a matter of caution required with respect to just such a traveler. It is precisely at this point that any analogy between the Helber case and the present case fails.
' In the latter, the city’s negligence in the matter, of the trench might found an action on the part of a traveler on foot, or by vehicle, whose voluntary progress over the street led him without fault on his part into the trench. If some circumstance commonly associated with travel or the means of travel combined with the presence of the trench to produce an accident, the analogy with the Helber case might hold. To carry the parallel further, however, and hold the city responsible for any circumstance or combination of circumstances that resulted in upsetting a vehicle in the trench is to cast upon the city the burden of an insurer.
The care incumbent on the city, and by the same token the responsibility that results from a want *119 of care, is measured with respect to the ordinary conditions and methods of travel, and in its scope comprehends doubtless the common misadventures of travelers, such as the stumble of a pedestrian or of a horse, or the failure of a vehicle’s wheels to hold the road absolutely. A runaway team is not within the category suggested. In the instant case, the running away of the team of horses with no driver behind them, and their course thereafter taken, were no more within the scope of reasonable anticipation on the part of those responsible for the condition of the city’s streets than would be the transit of an unoccupied automobile, the brakes of which had failed to hold, which catapulted into a roadside ditch or into the house of an abutting owner.
It is possible, though by no means certain, that a barrier might turn the course of runaway horses, though of course it would not turn aside an insensible machine, but it certainly cannot be thought that the duty of the city in the present case was to fence off the northern portion of this street including the trench in question by such a barrier as would prevent the passage of uncontrolled and in the phrase of plaintiff’s counsel “uncontrollable” horses. A fair interpretation of the allegations of negligence in the petition is that the city permitted the trench to remain open without excluding travel from that portion of the street. Probably no suggestion wras intended, certainly none is permissible, that the city’s duty in the premises extended to a continuous inclosure such as would *120 turn aside insensible and uncontrolled travel, as distinguished from the ordinary kind.
What has been said is but another method of stating that the open trench, in view of other uncontradicted evidence in the case as presented, was not the proximate cause of plaintiff’s injury. Ordinarily the issue of causation must be left to the jury, as it was in this case. It is not for the court to substitute its process of reasoning, however apparently sound, for that of the jury, in a field which belongs peculiarly to the latter.
In the field of legal obligations, on the contrary, it is the duty of the court, and it is its sole province, to speak decisively. An evasion of this duty is the very negation of law. It is from this viewpoint the present issue must be determined.
The permission by the city of the open trench was the cause of the plaintiff’s injury only in the sense that it was a condition in the absence of which it is possible to infer that the accident would not have occurred. Does the possible fact that this condition involved culpability on the part of the city with respect to certain members of the public suffice to make the city responsible to this particular member of the public, the plaintiff? The answer to this question has already been made. The city, let it be assumed, by suffering the existence of the trench, had failed in a duty which it owed to travelers pursuing the ordinary modes of' travel who used the unfinished portion of the street, being misled thereto by appearances or the absence of warning, or guards, or perhaps even by inadvertence excusable under peculiar circumstances. *121 The plaintiff was in none of these classes. Rather did he find himself carried to misadventure by an uncontrollable force for which neither he nor the defendant in error was responsible, the probability of which neither he nor the city authorities foresaw, and which the latter could not be held to foresee, unless upon the untenable assumption that its duty was to make the public ways of the city proof against all possible accidents other than collisions.
Taking the admitted facts in the light most favorable to the plaintiff, it must therefore be said that the accident resulted not from a defect in the street, not from an unguarded nuisance in or immediately adjacent to the street, but from an uncontrollable, though perhaps - non-culpable, departure from a public way, which, so far as appears, was reasonably safe for this team and those riding behind it as long as the team was under normal control. It was not under normal control, but uncontrollable, with no human agency directing or in a position to direct. The accident occurred not as an incident to travel on a way provided for the purpose, but rather because of a blind and insensate departure from the course of travel. The situation was therefore not essentially different from that which would have existed if the plaintiff had been thrown from the truck upon its striking violently against the curb in a part of the street admittedly in perfect condition.
It follows from the views expressed that the actual judgment of the court of appeals must be upheld. Upon the question whether the precise ground upon which that judgment was based was *122 correct, namely the failure of the trial court to charge upon the issue of joint enterprise, it may be unnecessary to express an opinion. It must, however, be observed that the trial court charged the jury fully and correctly upon the issue of the alleged contributory negligence of the plaintiff himself, and no request, either special, before argument, or supplementary, after argument, to cliarge upon the issue of joint enterprise was made by the defendant below.
It may therefore be doubted whether the ground of error relied upon for reversal was available to the plaintiff in error in the court of appeals, defendant in error here, in view of the principle laid down by this court in Columbus Railway Co. v. Ritter, 67 Ohio St., 53, and in many cases since.
The judgment of the court of appeals will be affirmed, and the cause remanded for further proceedings in accordance with this opinion.

Judgment affirmed.

Jones, Johnson and Wanamaker, JJ., concur.